Good morning, Your Honors. May it please the Court. Thank you. My name is Eskenow Sam from Glancy, Prongay & Murray on behalf of Plaintiffs. I'd like to reserve three minutes of my time for rebuttal. In this securities class action case, there are two reasons why we contend the District Court erred below. First, the Court erred by denying leave to amend with respect to our claims under Sections 10B and 20A of the Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933 based upon the discovery of new information. But don't we have a rule of mandate problem here? We don't believe so, Your Honor, and I'll address that I believe the Court erred by granting summary judgment with respect to the Section 11 claim. So on the rule of mandate issue, though, the District Court had initially dismissed it without prejudice on the, maybe the 10B claims, right, and the derivative claims. That's correct. And we, not me personally, but we as a Court of Appeals, we affirmed that. So we affirmed a dismissal without prejudice. So how do you get around that? Well, the reason we get around that, Your Honor, is based on the Wynn and Kellinger case, Kellington case, excuse me. And in both of those cases, the Ninth Circuit said that absent a explicit rule from the Court denying leave to amend, there is an ability for a party to present new which meant without leave to amend, and we affirmed that. So what's unclear about that? Okay, even if you accept the District Court's ruling on that issue, Your Honor, the District Court erred by failing to acknowledge that new information came to light that was not considered by the Ninth Circuit. So that information, which strongly indicates Defendant Scianter, shows that the 10B claim should be allowed. The leave to amend to pursue the 10B claim should be allowed. And there is numerous case law that we cite in our brief that shows that the mandate only applies to issues that the Ninth Circuit dealt with. So when there's new information that's presented, like in this case, we got tons of information from the company's auditor showing that Defendants engaged in Scianter by being deliberately reckless with respect to the company's accounting. That information is grounds for a leave to amend. So the mandate did not explicitly deal with those issues because the mandate only dealt with the issues before the Court. So if you look at the information that we allege, and there's a whole litany of information, I won't describe all of it here, but it shows that Defendants were engaging in deliberate recklessness with respect to the company's accounting issues. And that information shows that the 10B claim should be revoked. So what specifically is this information of Scianter? Well, specifically, Your Honor, the company's COO, the company's chief accounting officer, had information that showed that the company's intersegment revenues between the service and utility groups with the second quarter of 2006 were incorrect. They were basically saying that they were relying on the company's relationship with the Texas Commission Environmental Quality Board. They were relying on this information and saying that, oh, we have a good relationship with the Commission, therefore we don't have to verify the information with respect to the company's margin. And that information shows that the company was being reckless because they were relying on this relationship with the Commission and failing to accurately present information to investors. So that information is deliberate recklessness. It's in the eminent complaint and the company, the court below, and Defendants don't even address this information. So the court just disregarded all this new information based on the rule of mandate when it shows that leave to amend should be granted based on this discovery of new information. Counsel? Yes, Your Honor. What do you do with the language in Petrie that says that complaints and securities actions should rise or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed? What does that do to your argument? Well, Your Honor, Petrie actually supports our argument because in Petrie you have a situation where there was information that was produced by a third-party auditor, the same type of information that was here. And in Petrie, the court said if the receipt of discovery was not a violation of the PSLRA, Private Securities Litigation Reform Act, surely the use of discovery materials in the complaint was not prohibited. The mere reliance on validly obtained materials is not an abusive practice. But if it's in the complaint though, you want to do it after the complaint has been dismissed. And that's what happened in Petrie, Your Honor. In Petrie, claims were brought after the fact, after the complaint was... Was that with or without prejudice, dismissal in Petrie? I don't know that offhand, Your Honor, but it's a similar situation because the party in Petrie obtained information from the auditor and used that information for an amended complaint. And the court in Petrie said, we hold that a party does not violate the PSLRA discovery stay by relying on materials provided by a third-party pursuant to a valid subpoena issued when the PSLRA discovery stay was in effect. That's at 761 F3rd 969 through 70. So Petrie actually supports our argument because in that case, the information came after the fact, after the complaint was filed. And in Petrie, the court held that that information was relevant and supported the amended complaint. That's what we allege here. The rule of mandate does not apply when you have a situation like this, where you have information that comes in afterwards that supports claims that were previously dismissed. That's why the rule of mandate does not apply. Also, the district court failed to 60B and Rule 54 of the Federal Rules of Civil Procedure. Under those rules, you have similar authority that we cite in our opening memorandum, showing that when you have a situation like this, where new information is disclosed, the court should address whether or not those previously dismissed claims should be revoked. We have case law from the Ninth Circuit on that, the WPP case. We also have other authority that shows that when you have new information being presented, that information can support amending claims that were previously dismissed. Counsel? Yes. If the dismissal of the complaints in Petrie was without prejudice, do you lose? I don't know the question to that, Your Honor, because... If I represent to you that the dismissals in Petrie were without prejudice, do you lose? I don't think so, Your Honor, because... Why not? You have a situation here where you have information that supports claims that were previously dismissed, and whether it was with prejudice or without prejudice, the fact that that information supports the claims that we're alleging allows us to bring those the notion that additional information may be used if the complaint was dismissed without prejudice. Well... Do you have a case where the complaint was dismissed with prejudice, and newly discovered evidence was allowed after the complaint was dismissed? Well, this is a situation where we had one claim dismissed by the Ninth Circuit, but one claim was allowed to go forward. So our case was proceeding based upon the Section 11 claim. So that claim was still alive. The case was not dismissed entirely. So... But do you have a case where a claim was dismissed with prejudice, and then amendment was allowed of that claim after the dismissal with prejudice? Yes, and that would be in the Rule 60B context, Your Honor. In the Gould case, that's what happened in that case, where you have... Let me get the citation for that. That's... Is it in the brief? I believe so. 790... You'll find it, the Gould case. Yeah, 790 F. 2nd, 733. And the court there said, we agree and adopt the rule that once the appellate mandate has issued, leave of this court is not required for district court consideration of a Rule 60B motion. So that's... That's a different procedural mechanism than amending a complaint, which you are seeking here. But we cited Rule 60B in our motion. We brought the motion based on Rule 15A, 60B, and 54B. So all those are independent grounds for amendment. Those are issues that the district court failed to address, Your Honors. Defendants don't even address it in their brief. So all of those reasons are basis for amendment in this case, which the district court erred. Now, what's your 60B argument? Our 60B argument is, even if the court granted summary judgment of the Section 11 claim, and even if there was dismissal of the 10B claim, we have a motion for new, new information, based on new information, for the court to reconsider whether or not this claim should be revived, under Rule 60B. With respect to the 10B claim? Yes. Yes, Your Honors. Counsel, you may want to get to your Rule 11 issue. Yes, and quickly, Your Honor, with respect to... Counsel, before we leave that, though, which of the 60B subsections are you relying on? One through six. Which of those are you predicating your argument on? Rule 60B provides that, on motion and just terms, the court may relieve a party from a final judgment, order, or proceeding for the following reasons, and listen to... Which of those reasons are you arguing? Newly discovered evidence. That's the reason, Your Honor. Okay. So that's the basis for our Rule 60B motion. With respect to the summary judgment on the Section 11 claim, we believe the district court erred because there was a critical distinction between our case and other cases that the court failed to appreciate. And that's the fact that we're dealing with a company's dividend reinvestment plan. And pursuant to that plan, the shares that were issued were registered with the company. So the company issued those shares to investors. So unlike in the aftermarket situation, where you have tracing... Don't you have the problem of And that's the point that the district court... It's fungible. Those shares are all put in a pot. Well, Your Honor, the distinction is the company registered those shares pursuant to the DRIP plan. And once the company registered those shares, those shares are issued pursuant to the company. All right. But you yourself acknowledged that there's 262,513 shares that existed in the DRIP plan before Southwest issued the 500,000 shares under the 2006 statement. Right. That's a problem for you. No, it isn't, Your Honor, because the company did not go to the aftermarket to purchase additional shares. So if you look at excerpt of record 140, there were 1.4 million shares registered. But between 2006 and 2008, fewer shares were purchased through the plan than were registered under the 2006 registration statement. That's at ER 299 through 300. So the company did not have to go out and get additional shares. All the shares that came out of the registration statement were registered pursuant to the DRIP plan. And plaintiffs purchased those shares pursuant to the plan. I'd like to reserve the rest of my time for rebuttal. Thank you. Counsel, you may proceed. May it please the Court, Robert Brownlee for Southwest Water Company, Anton Grenier, Mark Swatek, Cheryl Clary, and Peter Morbek. Your Honor, this case arises from a securities class action suit that was filed in 2008 after Southwest Water announced a restatement. There are two issues before the court. The motion for summary judgment on the Section 11 claim and the motion for leave to amend. Because we spent so much time on the motion for leave to amend, with the court's permission, I'd like to address that issue. Your Honor, this is an issue that is governed by the rule of mandate. It is unique from all of the cases cited by plaintiffs in their brief. And to illustrate that, I have to decide whether there are exceptions to the rule of mandate. Your Honor, this court has previously held that there are no exceptions, that it's jurisdictional. But I'll get to the point that even if there were exceptions, they wouldn't apply here. And in this case, going back to the procedural history of this case, it was initially filed asserting claims under Section 10b of the Securities Exchange Act of 1934, the companion secondary liability claim under Section 20a, claims under Section 11 under the companion secondary liability claim under Section 15. After multiple rounds of pleading, the district court then dismissed the entire case with prejudice and without leave to amend. Plaintiffs appealed, arguing that the court, district court, erred on both sets of claims. And in reality, it's the Section 10b claim and the Section 11 claim. The court of appeals determined that the court, district court, had erred in dismissing the Section 11 claim, finding that it imported a scienter standard on that claim, and reversed and remanded the claim back to the district court. With respect to the Section 10b claim, the court of appeals examined the pleadings that were before the court at the time, zeroed in on the issue of scienter, and found three sets of facts alleged in the complaint at that time gave rise to a negative inference of scienter, that it was more likely than not that the defendants acted negligently, and said for three independent reasons, when you consider the totality of the complaint applying the U.S. Supreme Court's decision in tell-abs, that there was a negative scienter inference, in other words, that it appeared that the dismissal with prejudice, and the affirmance of the dismissal with prejudice is significant here and dispositive. A dismissal with prejudice means the claim is extinguished, and there's no further litigation of that claim. The claim no longer exists. Well, counsel, would you respond to Mr. Sam's argument about the Kellington case and some of the other defenses he made? Well, first of all, in the Kellington case, that presented a unique set of facts where the court allowed the defendant to assert new arguments at that time. The plaintiff also relies on when versus United States, and I would submit when versus United States actually supports the defendant's any further litigation. In the when case, that case was really two cases rolled up into one. One of them involved an individual by the name of Bertrand, and then you have when, who's the namesake of the case. With respect to Bertrand, the Court of Appeals directed the District Court to enter summary judgment for the government. With respect to when, the Court of Appeals did not enter summary judgment. Instead, told the District Court that Mr. When could assert all other challenges to the government action in question in that case. This case is like, with respect to the Section 10b case, the Bertrand portion of when, where the claim was extinguished, the dismissal with prejudice was affirmed, and then sent the when case back to the District Court, which is akin to the Section 11 claim. So with respect to those issues, and the fact that this circuit treats the rule of mandate as jurisdictional, the Section 10b claims no longer exist in the case sent back to the District Court. What also distinguishes this case from the other cases cited by the plaintiffs is that it is not as if the plaintiff here is citing a different claim. They are the identical claims that were litigated previously, nor is the plaintiff saying that there's some change of law or some manifest unjust result that may require when someone remains behind prison when they probably shouldn't be. None of those circumstances exist here. They are trying to re-litigate the precise same claims that this court disposed of in the previous appeal. Counsel? Yes. What's your response to opposing counsel's reliance on Rule 60b? Well, I've got two responses, Your Honor. First of all, or three actually, if we apply Thrasher, which says that there are no exceptions, then Rule 60b is that we're arguing that there's newly discovered evidence here. Given the procedural posture of this case and the overlay of the Private Securities Litigation Reform Act of 1995, wherein Congress made a policy decision that securities complaints should rise and fall on the knowledge of the plaintiffs without the benefit of discovery, and in the procedural context when this case first came up to the Court of Appeals, we weren't talking about evidence. Evidence had nothing to do with the case. It had everything to do with whether or not the allegations of the complaint pled with a high degree of specificity that the defendants acted with the intent to defraud. So coming back to the Court saying that they've got newly discovered evidence that suddenly may allow them to plead a claim doesn't seem to make sense because evidence never came into play in this case because we never reached that stage. On the final argument under Rule 60b, and while counsel said the issue was never addressed by the court below on the motion for leave to amend, the court actually looked at the issue. In its order, denying the motion for leave to amend, the district court here said that the rule of mandate does apply. And then it went on to address each of the plaintiffs' arguments. Well, do you think, let me ask you this, I asked him what evidence he has of Santer now. Do you think what he's offering is that adequate evidence of Santer? It is not, Your Honor. In fact, as I was getting to it, the district court on the motion for leave to amend also considered the proposed amended complaint. And what the district court did is it looked at the procedural history of the case, looked at what the prior district court judge, Judge Nguyen, did in the case in dismissing it, and it looked at what this court did in affirming the dismissal. And as I mentioned earlier, Your Honor, that on the appeal, the court of appeals found three independent facts that each one of which raised a negative inference of Santer, showing that the defendants acted negligently. And the district court looked at the proposed amendment on this motion for leave to amend and noted that even if they were allowed to amend here, it only addressed one of the two sets of facts that this court found raised a negative inference of Santer. So even if you were to consider the amendments, the district court did consider them and say that it wouldn't cure the other two sets of facts that negated inference, an inference of the claim wouldn't survive. And while the district court didn't write into the opinion the magic words that under Rule 15 that the amendment would be futile, the analysis of the district court shows that the amendment would be futile. One of the most significant sets of facts not addressed by the disclosed to the public in its Form 10-Qs and 10-Ks that our internal controls are not up to snuff and we're working hard to fix them. And their claim of securities fraud and Santer is based on the fact that they claim that Southwest Water concealed from the market that its internal controls were inadequate. That can't be because it disclosed them. And the proposed amendment also doesn't address the fact that the anonymous sources cited in the complaint confirmed that Southwest Water, just like it represented to the market, was attempting to address the inadequacies of its internal controls. So even under, if you were to say Rule 60B allows the court to consider the motion for leave to amend under Rule 15, and even if the court did a formal Rule 15 analysis or used the magic words of Rule 15 in analyzing the motion for leave to amend, the court, we know what the court would do. It would find that the amendment is futile and not allowed. And we would be back here again, presumably on the challenge of that specific decision. So... Counsel, do you want to speak to the Section 11 issue? Yes. Under Section 11, this is a unique claim and it is a very powerful claim for those who can assert it. It allows, under basically the same set of facts, and we see it play out here, where there's a false or misleading or allegedly false or misleading registration statement, you can either bring a Section 10B claim or you can bring a Section 11 claim. In the Section 11 claim, the plaintiff doesn't have all these hurdles that it needs to pass that we just discussed with respect to Section 10B. And they have the hurdle of tracing. So it's harder on the tracing, but it's easier on, you don't have the center. You don't have the center. And tracing, and one would think, because Section 11 is so powerful, you'd see it more often in securities cases. And you don't. Because the way the... Mr. Sams says that the shares in the plan were originally registered and these plaintiffs have the right to trace their ownership to those shares. What's wrong with that? Mr. Sams misses several important steps. And this happens in connection with any case alleging a Section 11 claim where a company has issued more than one registration statement. Here, Southwest Water had issued 16 registration statements. And what happens when, and this is shown in the record through the declarations, that when Southwest Water or any other public company registers securities, those securities don't go directly to the investors. The securities, the legal title of those securities passes to CD&Co, the nominee of the Depository Trust Corporation, and it is the owner, the legal owner of all of the shares of stock. So when these registration statements in question registered securities, Mr. Sams misses the step that the shares don't go from the company to the plaintiffs. It goes from the company to the transfer agent, which cancels the old registration statement, which may, for example, say there are 24.5 million shares of publicly traded registered stock available. The company issues a new share certificate showing 25 million shares, and then it just allocates beneficial interest, not the actual title to the shares, to shareholders who purchase from the DRIP plan. And it's just like when you take a dollar in your pocket and you go to the bank and deposit it in the bank and then later make a withdrawal from the bank, even though your bank statement went up by a dollar, there's no way to tell that when you pull out another dollar or more accurately or appropriately in this instance, make an electronics funds transfer of one dollar, there's no way you can tell that that dollar that's sent to the recipient is the same dollar that you put in. And that's what's missing here. And that's why no case has ever found an exception for dividend reimbursement plans, because the market and the system doesn't work that way. And courts have acknowledged that where companies have issued more than one registration statement, it's impossible to trace. And there's nothing in the statute that suggests a dividend And there is no policy reason why there should be an exception here. But could there ever be a case, well, like if they'd only had one registration? That's where you see Section 11 claims proceed, is after an IPO, before any other shares go into CD&Co's ownership. I was on the CRIM case that's cited in the brief there. Four days after the IPO, a privately issued stock got into the CD&Co share certificate and the circuit found you can't trace at that point. And here we have 16 registration statements that poured stock into the jumbo share certificate held by CD&Co or managed by the transfer agent, which makes tracing impossible. Thank you, Your Honor. Thank you, Counsel. Mr. Sams, you have some reserve time. Yes, Your Honors. First, with respect to whether or not there is an exception to the rule of mandate, Counsel stated that there are no exceptions and he cited the Thrasher case. But in Thrasher, that holding was in a concurring opinion. It wasn't the majority's opinion. And in fact, this court in Paul, the case that the district court and defendants failed to address, the court said, absent either new information or intervening case law, the district court was required to follow the principles announced in our prior disposition. That's 561 F3rd at 975. So in Paul, this court explicitly acknowledged that absent new information, the court was required to follow the mandate, which shows that if there's new information, as there is here, the court can depart from the rule of mandate. And that's where the district court erred here. Second, Counsel alluded to the fact that the new information that was alleged only addressed some of the categories of information regarding SciENter that was specified within the rule of mandate. Well, what the district court failed to do, though, was analyze the facts alleged holistically under TELEBS. That was required to determine whether or not there was SciENter properly alleged in the complaint. The court failed to do that. Just looking at whether or not certain categories of SciENter are alleged violates this court's decision in South Ferret. And also, with respect to one of the facts alleged, I would urge the court to look at the intercompany profit memorandum, which is ER 600 through 02 and ER 762 through 67, where CEO Moorbeek, COO Moorbeek, was saying that the Texas regulators would not challenge the company's margins with respect to intercompany construction projects because the company had this relationship with the regulators. That's deliberate recklessness, Your Honors. Thank you, Counselor. Your time has expired. Thank you. The case just argued will be submitted for a decision.
judges: O'scannlain, Rawlinson, Callahan